UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| HUGO ERNESTO CHAVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:13-CV-114-TAV-HBG |
| ) | |
| AT&T, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on Defendant Bellsouth Telecommunications, LLC's Motion for Summary Judgment [Doc. 50]. Plaintiff responded and filed a counter-motion for summary judgment on his behalf [Docs. 55, 56, 59]. Defendant replied [Doc. 57], and filed a response in opposition to plaintiff's motion for summary judgment [Doc. 62]. Upon consideration of the record and the relevant law, the Court will grant defendant's motion for summary judgment [Doc. 50], and deny plaintiff's motion for summary judgment [Doc. 55]

**I.    Background and Facts**

Plaintiff, proceeding pro se, commenced this action against defendant Bellsouth Telecommunications, LLC ("BellSouth"), which he identifies as "AT&T" in his complaint, and Robert Eacott ("Eacott"), his manager [Doc. 42]. Plaintiff is a former employee of BellSouth [*Id*.]. In his complaint, plaintiff alleged that he was fired in retaliation for having complained about discrimination in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e [*Id.*]. Plaintiff also filed an amended complaint against defendant Eacott alleging perjury under 18 U.S.C. §§ 1621–23 [Doc. 42]. This Court previously dismissed plaintiff's claims against defendant Eacott [Doc. 49].

Plaintiff was disciplined for failing to follow instructions in March of 2011, after which he filed an internal complaint against Eacott for discrimination based on his ethnicity [Doc. 43 ¶ 4]. Plaintiff alleges that his supervisor told him that he did not want to write him up, but that he had been pressured by Eacott to do so [*Id.*]. After plaintiff filed the complaint against Eacott, AT&T investigated the charge and neither disciplined nor reprimanded Eacott following its investigation [Doc. 51]. Plaintiff alleges that Eacott continued to retaliate against him and "continued hurting him through different means" [Doc. 43 ¶ 5].

In October 2011, while plaintiff was discussing another grievance he wanted to file, he told a job steward, Mr. Johnson, who was also a co-worker, that he would kill him if he did not handle plaintiff's grievance in the way he wanted it handled [Doc. 51]. When the steward reported this statement, AT&T investigated the allegation "and concluded that Plaintiff's statement to the steward had violated its Code of Business Conduct" [*Id.*]. Plaintiff alleges that on November 11, 2011, he told Eacott about the complaint he made against him back in March and thirteen days later, on November 23, 2011, he was terminated by Eacott for threatening a co-worker [Doc. 42 ¶ 5].

2

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillips Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the

3

evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

#### A. Defendant's Motion for Summary Judgment

In support of its motion for summary judgment, defendant presents two arguments. First, defendant argues that it is entitled to summary judgment because plaintiff cannot make out a prima facie case of retaliation for filing a discrimination complaint as plaintiff is unable to show that there is a causal connection between his protected activity and the termination of his employment [Doc. 51]. Second, defendant argues that plaintiff cannot prove that the reason for his termination was pretextual because defendant had a lawful, non-discriminatory reason for terminating him [*Id*.].

##### 1. Plaintiff's Prima Facie Case of Retaliation

Title VII of the Civil Rights Act of 1964 prohibits retaliation against an employee who has opposed an unlawful employment practice or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must prove

4

that: (1) he engaged in an activity protected by Title VII; (2) his exercise of protected rights was known to the defendant; (3) defendant thereafter took an adverse employment action against him or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (citing *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009)). Under the *McDonnell Douglas* burden-shifting framework, once the plaintiff establishes each of these elements, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason for its action." *Fuhr*, 710 F.3d at 674–75 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (internal quotations omitted)). If the defendant proffers a legitimate, non-discriminatory reason for the discharge, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was pretextual. *Id*. at 675.

Here, plaintiff has established, and defendant does not dispute, the first three elements of his prima facie case—that is, plaintiff engaged in protected activity by filing an internal discrimination complaint against Eacott, defendant had knowledge of plaintiff's complaint, and plaintiff's employment with defendant was terminated. Defendant argues, however, that plaintiff has failed to meet his threshold burden of establishing a causal connection between his protected activity and his termination [Doc. 51].

A plaintiff in a retaliation claim may establish causal connection by "proffer[ing] 'evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Fuhr*, 710 F.3d at 675 (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (citation omitted)). "While closeness in time may be one indicator of a causal connection, it has been observed that 'temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim.'" *Foust v. Metro. Sec. Servs., Inc.*, 829 F. Supp. 2d 614, 629 (E.D. Tenn. Nov. 8, 2011) (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 357, 364–65 (6th Cir. 2007)). Additionally, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (internal quotation and citation omitted)). "Although this issue of the impact of temporal proximity remains unclear, 'it does appear that the Sixth Circuit finds that anything over six months is generally insufficient, standing alone, to establish a causal connection.'" *Id.* (quoting *Eppes v. Enter. Rent-A-Car Co. of Tenn.*, No. 3:05-CV-458, 2007 WL 1170741 (E.D. Tenn. Apr. 18, 2007)).

Plaintiff argues that he engaged in a protected activity and that his protected activity was causally related to the adverse employment action taken by Eacott. He argues that Eacott retaliated against him because he accused Eacott of discrimination on March 3, 2011, through AT&T's Equal Employment Opportunity ("EEO") hotline [Doc.

6

43 ¶ 3]. Plaintiff further argues that his complaint was known to Eacott because he told Eacott on November 10, 2011, about filing the discrimination complaint, and that this was the cause of his termination thirteen days later [*Id.* at ¶ 9].

As evidence of a causal connection between his discrimination complaint and his subsequent discharge, plaintiff argues that the defendant presented several forged documents [Doc. 56].[1] Plaintiff states that Eacott subsequently changed the description of the disciplinary report that prompted his complaint in March 2011; that there was a discrepancy between Mr. Johnson's handwriting in his statement to defendant and a subsequent written note given to plaintiff; that there was a discrepancy with the written report of his EEO complaint; and finally, that there was a difference between the handwritten statement given by one of his co-workers and the typed statement prepared by the manager who investigated plaintiff's statement to Mr. Johnson [Docs. 43, 56].

In reply, defendant states that plaintiff's allegations do not establish any causal connection between his protected activity and his termination eight months later [Doc. 51]. Additionally, defendant states that there was nothing improper or suspicious about the differences referenced by plaintiff; rather, they all involved innocent mistakes, appropriate corrections, and consolidations of various statements made by plaintiff's co-workers [Docs. 51, 57]. There is no evidence in the record to show that plaintiff's allegations of forged documents are more than mistaken entries or designations by

---

[1] Plaintiff's response includes a section termed "forgotten documents" where he outlines discrepancies in several documents [Doc. 56]. Defendant has interpreted this section to mean forged documents. Because plaintiff has not opposed this interpretation, and the heading has little bearing on the Court's decision, the Court will adopt defendant's interpretation.

defendant. The Court does not find that these allegations are suspicious enough to lead the Court to infer the requisite causal connection.

Plaintiff also suggests that the temporal proximity between when he informed Eacott of the complaint he filed against him, and his subsequent termination thirteen days later, is proof of a causal connection between his protected activity and the adverse employment action [Doc. 43]. While this would ordinarily give rise to an inference of causation, the record indicates that Eacott knew about plaintiff's complaint when plaintiff initially made it eight months prior to his termination [Doc. 51]. It is well established that such a lapse between when defendant learns of the protected activity and plaintiff's termination is insufficient, standing alone, to establish causation. *See Foust*, 829 F. Supp. 2d at 629.

The Court finds that plaintiff cannot prove the requisite causal connection based on temporal proximity or the discrepancies he outlines in his briefs. Viewing the facts in the light most favorable to plaintiff, as the Court is required to do on a motion for summary judgment, plaintiff has not presented sufficient evidence to create a genuine issue of material fact on there being a causal connection between his protected activity and his termination. Thus, because there is no evidence in the record on which to submit the issue of causation to the jury, defendant is entitled to summary judgment on plaintiff's claim under Title VII.

### 2. Plaintiff's Evidence of Pretext

Even if plaintiff were able to establish a causal connection between his protected activity and his termination, thereby making a prima facie case for retaliation, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's discharge: that plaintiff was discharged for violating AT&T's code of business conduct [Doc. 51]. A plaintiff can establish that a defendant's proffered reason is pretext by showing that: (1) the reason has no basis in fact; (2) the reason did not actually motivate the challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct. *Foust*, 829 F. Supp. 2d at 632 (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)).

Plaintiff alleges that defendant's reason is purely pretextual because his statement to Mr. Johnson was not a serious threat and, therefore, did not provide a sufficient basis to terminate him [Doc. 56]. Plaintiff also argues that pretext is proven by the fact that other workers at AT&T used similar words and made similar statements and were never investigated or terminated [*Id.*]. Particularly, plaintiff references that his co-worker, Mr. Johnson, once stated: "whoever gets involved with my wife, I will kill him" [*Id.*]. Plaintiff also claims that he also overheard his supervisor's side of a telephone call where his supervisor said something along the lines of "you are killing me" [*Id.*].

In response, defendant contends that "[t]he policy that Plaintiff violated does not distinguish between 'real' threats and threats that are 'jokes'" [Doc. 51]. The applicable portion of defendant's policy provides: "Never ridicule, intimidate, threaten or demean

9

coworkers and customers, or any others we come into contact with at AT&T. This kind of behavior hurts the team environment we work hard to foster. Remarks, comments, jokes, or gestures of an offensive nature will not be tolerated" [Doc. 56-1 p. 46]. Defendant argues that plaintiff's statement violated its policy regardless of whether he made it in jest or not [Doc. 51]. Defendant also argues that plaintiff's claim that he was treated differently than similarly situated employees does not prove pretext because plaintiff cannot show that defendant knew about Mr. Johnson's statement, or that his supervisor's statement was made in a comparable context [Doc. 51].

It is well established that an employee's violation of an employer's policy is a legitimate reason for termination. *See, e.g., Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 367 (6th Cir. 2009) (finding that the plaintiff's series of documented policy violations constituted a legitimate and non-discriminatory reason for termination); *Crump v. Kroger Co.*, No. 98-3134, 1999 WL 98673, *1 (6th Cir. Feb. 9, 1999) (finding that the defendant had met its burden of articulating a legitimate, non-discriminatory reason for the plaintiff's termination where the plaintiff had engaged in a physical altercation with another employee in violation of the employer's rules).

Here, defendant terminated plaintiff after he stated "I will kill you" to a co-worker [Doc. 51]. Defendant was under no obligation to determine whether this statement was made as a serious threat or as a joke because regardless, it contravened defendant's policy. Furthermore, there is nothing in the record that leads the Court to believe that defendant knew about Mr. Johnson's statement and failed to investigate it. The Court is

10

also persuaded that the context in which plaintiff's supervisor used the word "kill" is sufficiently different from plaintiff's use of the word to warrant different treatment under defendant's policy or to otherwise render the policy inapplicable to that situation.

Thus, even if plaintiff provided a sufficient indication of a causal connection between his protected activity and his discharge, because defendant has articulated a legitimate non-discriminatory, and non-pretextual, reason for plaintiff's discharge, defendant is entitled to summary judgment.

**B.     Plaintiff's Motion for Summary Judgment**

Plaintiff has also moved the Court for summary judgment on his Title VII claim [Doc. 56]. In response, defendant argues that plaintiff's motion for summary judgment was untimely under the scheduling order [Doc. 62]. Alternatively, defendant argues that plaintiff is not entitled to summary judgment because plaintiff cannot establish a prima face case of retaliation or show pretext [*Id.*].

The Court's scheduling order provides that all dispositive motions must be filed at least 120 days prior to trial [Doc. 31]. Trial is set for June 30, 2014, and Sunday, March 2, 2014, is 120 days prior to the trial date. When computing time, the Federal Rules of Civil Procedure instructs to "include the last day of the period, but if the last day is a Saturday, Sunday, or a legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Under this rule, the latest date for plaintiff to file his motion would have been March 3, 2014.

Plaintiff filed his motion on Thursday, March 13, 2014, making his filing untimely pursuant to the Court's scheduling order.

Regardless, in light of the Court's finding that defendant is entitled to summary judgment, the Court finds that plaintiff cannot prove a prima facie case for retaliation or show pretext. Accordingly, plaintiff's motion for summary judgment will be denied.

## IV. Conclusion

For the reasons stated above, the Court will **GRANT** defendant's motion for summary judgment [Doc. 50] and **DENY** plaintiff's motion for summary judgment [Doc. 55]. This action will be **DISMISSED** and the Clerk will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

12

Case 3:13-cv-00114-TAV-HBG   Document 66   Filed 05/28/14   Page 12 of 12   PageID #: 753